```
 1                    BEFORE THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES OF AMERICA,        .
                                      .  Case Number 21-cr-639
 4              Plaintiff,            .
                                      .
 5         vs.                        .
                                      .  Washington, D.C.
 6   ANTHONY SARGENT,                 .  July 21, 2023
                                      .  9:19 a.m.
 7              Defendant.            .
     - - - - - - - - - - - - - - - -

 8

 9                     TRANSCRIPT OF PLEA HEARING
                    BEFORE THE HONORABLE TREVOR N. MCFADDEN
10                      UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the United States:      JOSHUA ONTELL, AUSA
                                 ANDREW HAAG, AUSA
14                               United States Attorney's Office
                                 601 D Street Northwest
15                               Washington, D.C. 20579

16   For the Defendant:          WILLIAM SHIPLEY, JR., ESQ.
                                 Law Offices of William L. Shipley
17                               P.O. Box 745
                                 Kailua, Hawaii 96734

18

19

20

21   Official Court Reporter:    SARA A. WICK, RPR, CRR
                                 333 Constitution Avenue Northwest
22                               Room 4704-B
                                 Washington, D.C. 20001
23                               202-354-3284

24

     Proceedings recorded by stenotype shorthand.
25   Transcript produced by computer-aided transcription.
```

```
 1                      P R O C E E D I N G S

 2          (Call to order of the court.)

 3              COURTROOM DEPUTY:  Your Honor, we are in Criminal

 4     Action 21-639, the United States of America versus Anthony

 5     Sargent.

 6          If I can have counsel please approach the podium and state

 7     your names for the record, starting with the United States.

 8              MR. ONTELL:  Your Honor, AUSA Joshua Ontell for the

 9     United States.  And I'm here with co-counsel AUSA Andrew Haag.

10              THE COURT:  Good morning, gentlemen.

11              MR. SHIPLEY:  Good morning, Your Honor.  William

12     Shipley on behalf of Anthony Sargent, who is in present in

13     court.

14              THE COURT:  Good morning, Mr. Shipley.  Good morning,

15     Mr. Sargent.

16          Mr. Shipley, Reyn Spooner, is that the shirt of choice?

17              MR. SHIPLEY:  The travel shirt of choice for

18     yesterday.  I had a little thunderstorm activity in Denver that

19     hung me up.

20          Your Honor, we all appreciate you standing in for Judge

21     Friedrich today.  I think obviously what we're doing, we have a

22     guilty plea without a plea agreement.

23          We have discussed back and forth with the government --

24              THE COURT:  If you can just approach the podium, sir.

25              MR. SHIPLEY:  -- whether we could reach a plea
```

1    agreement.  There's no real issues.  It just comes down to,

2    there's certain things they wanted in a plea agreement that we

3    were unwilling to provide.

4         And so our alternative simply began -- or became to plead

5    guilty to all the charges in the indictment, which allows us to

6    reserve certain issues for sentencing without having to concede

7    them in an agreement, as the government would have wanted.

8         It might be a little bit more of an evolved process to get

9    through the factual basis without something precrafted that both

10   sides agreed upon.  But I think it's not too heavy a lift, and

11   we should be able to do it without too much difficulty.  There

12   is one felony count and five misdemeanor counts in this case.

13        THE COURT:  So are you -- you don't have a Statement

14   of Offense either; is that correct?

15        MR. SHIPLEY:  I have crafted what I think is minimally

16   necessary for the Court to be satisfied that there's a factual

17   basis.  Beyond that, the facts are in dispute for purposes of

18   sentencing.

19        THE COURT:  All right.  So I see something here

20   from -- okay.  This is what you're proposing, this memo, that we

21   proceed with?

22        MR. SHIPLEY:  Correct.  The government has provided

23   something much longer, much more consistent with what the

24   government would write in a plea agreement, and that much longer

25   document is what we're not willing to agree to at this point.

1    But that's not the only problem.  There are other things

2    the government wanted in a plea agreement that we weren't

3    willing to provide.

4         THE COURT:  All right.  So it's your proposal that I

5    just kind of go through the elements of the offenses and ask

6    your client if he agrees to them?

7         MR. SHIPLEY:  Satisfy yourself that he is knowingly

8    and intelligently pleading guilty and that there's sufficient

9    facts to support the plea, and we will fight over everything

10   else at sentencing.

11        THE COURT:  All right.  Mr. Ontell, does that make

12   sense to you?

13        MR. ONTELL:  Your Honor, are we doing the facts or

14   just the elements?

15        THE COURT:  Well, I mean, I certainly think we need to

16   discuss the facts, although -- let me ask you this, Mr. Ontell.

17   Thank you, Mr. Shipley.

18   Mr. Ontell, you can approach the podium.  I take it you've

19   seen this document from Mr. Shipley?

20        MR. ONTELL:  Your Honor, we've seen a version of it.

21   Mr. Shipley did make a couple updates to it just a few minutes

22   ago.  We're going through that version right now.

23        THE COURT:  All right.  I guess I'm going to be

24   interested in whether you think it does not meet elements of the

25   offenses.  I think that strikes me as the most important thing

1    right now.

2            MR. ONTELL:  Yes, Your Honor.  And we think it's quite

3    close, and we did make some suggested changes, which I think

4    Mr. Shipley adopted.  So once we're finished just reading

5    through it, and it shouldn't be more than a couple more minutes,

6    I think we can make an affirmative answer to your question one

7    way or another very shortly.

8            THE COURT:  All right.  So I will get started with

9    Mr. Sargent, and you all can continue reading.

10       Mr. Sargent, can you approach the podium, sir.

11       All right.  Sir, I'm covering this plea hearing for Judge

12   Friedrich, who is dealing with a family emergency.  I understand

13   that you're prepared to enter a plea to the indictment without a

14   plea agreement.  I've reviewed the factual basis for the guilty

15   plea, which Mr. Shipley has provided, and the government's

16   Notice of Information, both of which the Court will ask the

17   courtroom deputy to make a part of the record.

18       Mr. Sargent, before we continue with this plea, let me

19   confirm my understanding that you have consented to me presiding

20   over your plea hearing in Judge Friedrich's absence.

21       Is that correct?

22            THE DEFENDANT:  Yes, Your Honor.

23            THE COURT:  And sir, you understand that you could

24   request a continuance and have the plea actually heard before

25   her some time next week or afterwards?

1                THE DEFENDANT:  I understand that, Your Honor.

2                THE COURT:  Do you understand that this case remains

3     Judge Friedrich's case and that she will be the sentencing judge

4     in it?

5                THE DEFENDANT:  Yes, Your Honor.

6                THE COURT:  Am I correct that you're prepared to enter

7     a plea to the indictment without the benefit of a plea

8     agreement?

9                THE DEFENDANT:  Yes, Your Honor.

10               THE COURT:  All right.  Do you understand that even if

11    there is no plea agreement, with this plea of guilty, you will

12    still be bound by your plea and will have no right to withdraw

13    it, even if the sentence Judge Friedrich imposes in this case is

14    longer than you expect it will be?

15               THE DEFENDANT:  Yes, Your Honor.

16               THE COURT:  All right.  I will ask the courtroom

17    deputy to administer the oath to the defendant.

18         (Defendant sworn.)

19               THE COURT:  Sir, do you understand that you've been

20    placed under oath, and if you testify falsely, you could be

21    prosecuted for perjury or making a false statement?

22               THE DEFENDANT:  Yes.

23               THE COURT:  I must ask you certain questions to ensure

24    that you understand your rights and that this plea is voluntary.

25    If you don't understand any of my questions or if at any time

1    you wish to consult with your attorney, please let me know.

2    It's essential to a valid plea that you understand each question

3    before you answer.

4        Does that all make sense, sir?

5            THE DEFENDANT:  Yes.

6            THE COURT:  When were you born, sir?

7            THE DEFENDANT:  May 6, 1976.

8            THE COURT:  And where were you born?

9            THE DEFENDANT:  In Ogdensburg, New York.

10            THE COURT:  How far did you go in school?

11            THE DEFENDANT:  High school.

12            THE COURT:  Have you taken any drugs or medication or

13    anything else in the last two days that make it difficult for

14    you to follow these court proceedings?

15            THE DEFENDANT:  No.

16            THE COURT:  Is there any other reason that might make

17    it difficult for you to follow these proceedings?

18            THE DEFENDANT:  No.

19            THE COURT:  Have you received a copy of the

20    indictment, which contains the written charges against you in

21    this case?

22            THE DEFENDANT:  Yes.

23            THE COURT:  Did you read it?

24            THE DEFENDANT:  Yes.

25            THE COURT:  Do you understand the charges against you?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Mr. Shipley, do you have any doubt as to

3    your client's competence to enter a plea at this time?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  And Mr. Ontell?

6          MR. ONTELL:  No, Your Honor.

7          THE COURT:  All right.  I find that the defendant is

8    fully competent and capable of entering an informed plea.

9        And as we were saying a moment ago, Mr. Shipley, I have

10   before me your document laying out what you believe is the

11   factual -- or you propose a factual basis for a guilty plea.

12       Is it the defense position that this statement satisfies

13   each of the elements for all seven counts of the indictment?

14         MR. SHIPLEY:  Yes, Your Honor.

15         THE COURT:  Mr. Ontell, have you had an opportunity to

16   review this?

17         MR. ONTELL:  Yes, Your Honor.  And we do believe that

18   he does meet the elements.  However, Your Honor, there's a

19   factual concern here.  Essentially, the government understands

20   that Mr. Sargent --

21         THE COURT:  Just make sure you're speaking into the

22   microphone and that the green light is on.

23         MR. ONTELL:  Your Honor, there's a concern here that

24   to the government's knowledge Mr. Sargent never entered the

25   Capitol building, though he was on the Capitol grounds.

1    So we have a few proposed changes that we've done in

2    handwriting that I would be happy to show Mr. Shipley to see if

3    he's agreeable to them that I think we would want to have

4    adopted.

5              THE COURT:  All right.  Are you suggesting this is

6    saying that he did go into the Capitol building?

7              MR. ONTELL:  Yes, Your Honor.  On the second page,

8    right in the middle of the page, the paragraph that

9    starts "earlier in the day," it says, "Mr. Sargent did willfully

10   and knowingly enter the United States Capitol building."

11             THE COURT:  Is it the defense's position that he did

12   go into the Capitol?

13             MR. SHIPLEY:  He went through one set of doors into a

14   foyer that was sort of like the lead into the building itself.

15   We've had this issue with two sets of doors back to back and

16   which one becomes entry into the building.

17       So from our discussions, I advised my client that first set

18   of doors is enough.

19             THE COURT:  I'm not inclined to quibble if the defense

20   says that he went into the Capitol building.

21             MR. ONTELL:  That's fine with us, Your Honor.

22             THE COURT:  Any other concerns?

23             MR. ONTELL:  Yes, Your Honor.  There's just one

24   portion of the Statement of Facts that says, "While inside the

25   Capitol, he did knowingly and willfully parade, demonstrate, or

picket."  Again, that's just something we wanted to ensure was
factually accurate.  If Mr. Shipley thinks that it is, we're
fine having it -- still having it in there.  We didn't want it
in there unless that's something Mr. Shipley wants in there.

MR. SHIPLEY:  Yeah, this actually went to a drafting
error that I made originally where I included as a fact, and
that's not actually the subparagraph of the 5102 count.  It's a
different subparagraph.  So I in drafting grabbed the charging
language from the wrong subparagraph.

But I think it's harmless leaving it there.  It doesn't
really matter.  It's just a different subsection of the same
statute.

THE COURT:  Okay.  What I have here is, he entered and
remained inside the Capitol knowing that he did not have
permission to do so, and while inside the Capitol, he did
knowingly and willfully parade, demonstrate, or picket.

MR. SHIPLEY:  Yes.  He's not charged with the
parading, demonstrating, and picketing subsection.  He's charged
with a different subsection.  So that's my point.  When I
drafted this, I grabbed the wrong subsection when I was
including the elements.

So in effect, he's admitting to a different subsection that
he's not even charged with.

THE COURT:  But you're comfortable it does cover what
he is charged with?

```
1              MR. ONTELL:  Yes.  If Mr. Shipley is -- we just wanted
2     to raise it.  That's fine.
3              THE COURT:  Okay.  Thank you.
4         So I don't think I have something with his signature on
5     here to the Statement of Facts.
6              MR. SHIPLEY:  No.  If you would like him to sign it,
7     that's fine.  Judge Jackson had the same question as to whether
8     my client should sign it, and we had him sign it.
9              THE COURT:  Mr. Hopkins, can I ask you to -- maybe,
10    Mr. Shipley, you can add some language there that "I've read and
11    agreed to this."  You can just handwrite that in, and if your
12    client agrees to it, you can both sign it.
13        All right.  I have added language above this saying, "I
14    have read this document and understand it and agree with it."
15        Is that, in fact, correct, Mr. Sargent?
16             THE DEFENDANT:  Yes.
17             THE COURT:  And, sir, this is indeed your signature on
18    the last page of this document?
19             THE DEFENDANT:  Yes, Your Honor.
20             THE COURT:  Okay.  Have you read it thoroughly before
21    signing it?
22             THE DEFENDANT:  Yes, Your Honor.
23             THE COURT:  And is this a true and accurate
24    description of what you did in this case?
25             THE DEFENDANT:  Yes, Your Honor.
```

1          THE COURT:  All right.  Before proceeding further,

2     Mr. Sargent, I would like to ask you a few questions.

3          Is it true that when you arrived on the Capitol grounds on

4     January 6, you knew that Congress was meeting inside the Capitol

5     building to certify the vote count of the Electoral College of

6     the 2020 presidential election?

7          Do you want to talk with your attorney?

8          (Defense counsel and defendant conferred.)

9          THE DEFENDANT:  I did know that Congress was meeting,

10    Your Honor.

11         THE COURT:  Okay.  And did you know -- and I'm not

12    asking if you understood all of the ins and outs of the

13    electoral certification, but did you know they were meeting

14    relating to this vote certification?

15         THE DEFENDANT:  Not specifically, Your Honor.

16         THE COURT:  Okay.  What did you think they were doing

17    when they were meeting?

18         THE DEFENDANT:  I knew it had something to do with the

19    election.

20         THE COURT:  Okay.  Mr. Shipley, do you believe that is

21    sufficient to meet this knowledge element?

22         MR. SHIPLEY:  Your Honor, I think for the counts in

23    this case, yes.  He's not charged with 1752 count or 1512 count.

24    So we don't have an official proceeding issue.  All we have is a

25    civil disorder and the misdemeanors.

1          THE COURT:  Thank you.

2      Did you also know that when you entered the Capitol

3  grounds, you were on restricted -- in a restricted area, sir?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  And did you know that you lacked the

6  lawful authority to enter and remain on the Capitol grounds?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Did you know that you were not permitted

9  to be inside the Capitol building that day?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Do you agree that the Capitol building and

12  the Capitol grounds were restricted because the Vice President

13  of the United States was temporarily visiting the Capitol on

14  that day?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Is it also true that at approximately

17  4:00 p.m. that day, you threw a heavy rock-like object at the

18  north doors of the Capitol building twice?

19         THE DEFENDANT:  I wouldn't categorize it as heavy, but

20  yes, Your Honor, I did throw an object at the door.

21         MR. SHIPLEY:  Just so I can -- I want the record to be

22  clear.  We've talked about those things.  He didn't know it was

23  a rock.  It was something he picked up off the ground.

24         THE DEFENDANT:  I don't want to say anything that

25  isn't true, Your Honor.

1          THE COURT:  I understand.

2          MR. SHIPLEY:  Initially, the government wrote it as a

3    rock, and we said we weren't sure what it was.  We agreed on a

4    rock-like object.

5          THE COURT:  And that's what you said, it's a rock-like

6    object; correct?

7          THE DEFENDANT:  That's correct, Your Honor.

8          THE COURT:  And I understand heavy is kind of a bit of

9    a loose term, but it was heavy enough to cause damage to the

10   doors; is that correct?

11         THE DEFENDANT:  My understanding is it caused damage

12   to the door, Your Honor.

13         THE COURT:  Do you also agree that police officers

14   were standing directly behind the doors?

15         THE DEFENDANT:  I don't know that, Your Honor.

16         THE COURT:  All right.

17         THE DEFENDANT:  I had no way to see through them.  It

18   wasn't something you could see through, Your Honor.

19         THE COURT:  Understood.  When you threw the rock-like

20   object, did you intend to disrupt the Joint Session of Congress?

21         THE DEFENDANT:  No, Your Honor.

22         THE COURT:  All right.  Is it also true that you

23   impeded the law enforcement officers by refusing to comply with

24   their lawful commands while they were carrying out their lawful

25   duties to secure the Capitol building and grounds during the

1    riot?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Do you also agree that the riot you were a

4    part of adversely affected commerce in the District of Columbia?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  On that date, inside and outside of the

7    Capitol building, did you engage in disorderly or disruptive

8    conduct with the intent to impede the joint session and other

9    government business on that day?

10           THE DEFENDANT:  I did not intend to impede the joint

11   session nor impede any business.

12           THE COURT:  Okay.

13           MR. SHIPLEY:  Your Honor, if I can stop just for a

14   moment.  I think that count does not require that he know what

15   the business is in this instance, just that there is business

16   going on inside the building.

17           THE COURT:  And so is it true that you were in fact

18   looking to impede the business of the Congress, whatever it was?

19           THE DEFENDANT:  Could you restate the question, Your

20   Honor?

21           THE COURT:  Yes.  Did you -- was your conduct done

22   with the intent to impede, disrupt, or disturb the orderly

23   conduct --

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  -- of a session of Congress?

1    THE DEFENDANT:  Yes, Your Honor.

2    THE COURT:  And do you agree that you did, in fact,

3    disrupt the orderly conduct of government business both inside

4    and outside of the Capitol building?

5    THE DEFENDANT:  Yes, Your Honor.

6    THE COURT:  All right.  Mr. Ontell, is it your view

7    that the facts as stated in this factual basis and admitted here

8    satisfy the elements of the seven counts of the indictment?

9    MR. ONTELL:  Your Honor, we have one question that we

10   think is important to clarify.  We would like to ask, were you

11   aware of the law enforcement officers in the area of just behind

12   the doors?

13   THE DEFENDANT:  No.

14   THE COURT:  I think he said he was not.

15   MR. SHIPLEY:  I think these were solid doors.  He

16   couldn't see what was on the other side.

17   MR. ONTELL:  Just a moment's indulgence, Your Honor.

18   (Government counsel conferred.)

19   MR. ONTELL:  Your Honor, there has to be a knowledge

20   of the police being there for impeding and obstructing -- to

21   meet that element of the 231 charge.  If he's saying he doesn't

22   know that they were there, we're happy to show video.  There are

23   glass panels, and you can see the police moving.  We'd be happy

24   to take a minute to show defense that, if that's something he

25   would like to see.

1          THE COURT:  Well, let me ask you this, sir:

2   Regardless of whether you knew there were officers on the other

3   side of that door, were you aware that there were law

4   enforcement officers there in that area?

5          THE DEFENDANT:  In the building somewhere, sure, yes.

6          THE COURT:  And did you realize that by throwing a

7   rock-like object at the door of the Capitol building, you could

8   be impeding their actions as law enforcement officers?

9          MR. SHIPLEY:  Before he answers that, Your Honor, let

10  me back up, please.

11      Throwing the object and damaging the doors goes to Count 2,

12  the depredation of government property.  It doesn't go to

13  Count 1, the 231.  Th 231 is simply refusing to comply with the

14  instructions of the officers to disperse and leave.  That's the

15  civil disorder.

16         THE COURT:  Okay.

17         MR. SHIPLEY:  And that's kind of my point is, we're

18  not prepared to concede on some of the issues the government

19  wants us to concede.  The impeding doesn't require throwing a

20  rock-like object.

21         THE COURT:  I understand.  And maybe I -- obviously, I

22  don't know the full scope of your client's contact.  There was

23  another incident, you're saying?

24         MR. SHIPLEY:  Yes, yes.  He had a face to face with an

25  officer instructing people to leave, and he refused to leave.

1          THE COURT:  Is that, in fact, correct, sir?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  And when you refused to leave, did you

4    intend to obstruct, impede, or interfere with law enforcement

5    officers?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  All right.  Mr. Ontell, does that satisfy

8    your concerns?

9          MR. ONTELL:  Your Honor, I think -- there's a concern

10   here.  The fact is very vague here.  I would like to understand.

11       So was he just saying he was asked to leave and he said no?

12   Was there some pushback?

13       We want to understand the circumstance to understand what

14   the conduct was that obstructing or impeding or interfering was.

15       Or was there just a simple order saying you have to leave

16   and he said no?

17       It's very hard to tell, given what he said, to see if it's

18   an adequate factual basis.  It just needs to be a little --

19   we're getting to the line here.  We think we're just not quite

20   across the line here.

21         THE COURT:  All right.  Did you have language that you

22   thought met that element?

23       I don't think I've seen your factual --

24         MR. ONTELL:  Your Honor, we have a copy.

25       Essentially, the issue is, we were basically saying that

1    the officers were behind the door, and he was trying to get --

2    throwing the rock at the door knowing the officers were there.

3              MR. SHIPLEY:  If I could add to the confusion.

4              THE COURT:  All right.

5              MR. ONTELL:  We'd be happy -- if we get there with

6    Mr. Sargent and Mr. Shipley, we would be happy to craft language

7    that would work for both parties.  We just don't think right

8    there -- we're very close, but we're not quite there yet.

9              MR. SHIPLEY:  Your Honor, may I have just a minute to

10   talk with government counsel?

11             THE COURT:  You may.

12         (Government counsel and defense counsel conferred.)

13             MR. SHIPLEY:  Okay.  I think we solved the problem.

14       Your Honor, in the first plea offer the government sent us,

15   there was a description of an encounter to a protestor and

16   police officer who were engaged in a physical confrontation.

17   Mr. Sargent got in between them.  And that was the basis of the

18   government's first offer for the 231, was him interfering with

19   that officer trying to deal with that other protestor.

20       That's, in effect, what he's prepared to admit to today.

21             THE COURT:  Tell me about that, Mr. Sargent.

22       What did you do involving that protestor?

23             THE DEFENDANT:  I was standing on the stairs.  An

24   officer gave another officer an order to grab someone.  I'm not

25   sure why.  And they -- the officer jumped down, grabbed them,

1   fell to the ground near me, and then the crowd came -- rushed at

2   us, and I picked them both up and separated them so that he

3   couldn't continue what he was doing, neither one of them.

4           THE COURT:  So you pulled the police officer --

5           THE DEFENDANT:  Yeah, I pulled the two apart and

6   separated them both.  And then that was the language in their

7   plea agreement saying that was civil disorder.  Stopping the two

8   from doing that is what I did.

9           THE COURT:  It sounds to me like you stopped a police

10  officer --

11          THE DEFENDANT:  I did, yes.

12          THE COURT:  Sir, I need you to let me finish.

13          THE DEFENDANT:  Oh, I'm sorry.

14          THE COURT:  It sounds to me like you prevented a

15  police officer from arresting a rioter; is that fair?

16          THE DEFENDANT:  Ultimately, that is what occurred,

17  yes.

18          THE COURT:  And in doing so, did you -- let me find

19  the correct language now.  Did you do so with the intent to

20  impede or disrupt a -- one or more law enforcement officers?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.  And do you agree that that law

23  enforcement officer was in fact engaged in the lawful

24  performance of his official duties at that time?

25          THE DEFENDANT:  Yes.

```
 1              THE COURT:  All right.  Gentlemen, are you satisfied
 2    with that?
 3              MR. ONTELL:  Yes, Your Honor.  We would like that to
 4    be added to the Statement of Facts.
 5              THE COURT:  All right.  Why don't I give this to
 6    Mr. Hopkins.  Maybe you can give that to the prosecutor, who can
 7    try to draft up some language there in the bottom that
 8    summarizes that.
 9              MR. SHIPLEY:  We'll write it in and initial it.
10              THE COURT:  Mr. Shipley, you agree that that meets the
11    elements of civil disorder?
12              MR. SHIPLEY:  Yes, Your Honor.
13              THE COURT:  Okay.  And so I'm going to go through with
14    you now, sir, the elements of the various offenses.
15         First, the elements of civil disorder are the defendant
16    committed or attempted to commit any act to obstruct, impede, or
17    interfere with any law enforcement officer; second, that the law
18    enforcement officer was engaged in the lawful performance of his
19    official duties incident to and during the commission of a civil
20    disorder; and third, that the civil disorder in any way or
21    degree obstructed, delayed, or adversely affected commerce or
22    the movement of any article or commodity in commerce or the
23    conduct or performance of any federally protected function.
24         Do you understand those elements, sir?
25              THE DEFENDANT:  Yes.
```

1          THE COURT:  And do you agree that the evidence here

2     shows that you violated the statute by -- by your conduct

3     meeting each of these elements?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  All right.  Sir, the elements of

6     destruction of government property are that the defendant

7     willfully injured, damaged, or destroyed property and the

8     property was the property of the United States or of any

9     department or any agency thereof or any property which had been

10    or was being manufactured or constructed for the United States

11    or any department or agency thereof.

12        Do you understand those elements, sir?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  And do you agree that you in fact

15    committed destruction of property by doing conduct that

16    satisfies both of those elements?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Sir, the elements of entering and

19    remaining in a restricted building or grounds are that the

20    defendant knowingly entered or remained in any restricted

21    building or grounds without lawful authority to do so.

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Do you understand that element, sir?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  And do you in fact agree that you did

1  knowingly enter and remain in any restricted building or ground

2  without lawful authority to do so?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  Sir, the elements of disorderly and

5  disruptive conduct in a restricted building or grounds are that

6  the defendant engaged in disorderly or disruptive conduct in or

7  within proximity to any restricted building or grounds; second,

8  the conduct occurred when or so that such conduct in fact

9  impeded or disrupted the orderly conduct of government business

10 or official functions; and third, that the defendant did so

11 knowingly and with the intent to impede or disrupt the orderly

12 conduct of government business or official functions.

13     Do you understand those elements, sir?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  And do you in fact agree that you

16 committed conduct that meets each of those elements on

17 January 6?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  Sir, the elements of engaging in physical

20 violence in a restricted building or grounds are that the

21 defendant engaged in any act of physical violence against any

22 person or property in any restricted building or grounds.

23     Do you understand that, sir?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  Do you agree that you in fact did this?

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  Sir, the elements of disorderly conduct in

3   a Capitol building are, first, the defendant uttered loud,

4   threatening, or abusive language or engaged in disorderly or

5   disruptive conduct at any place in the ground or any of the

6   Capitol buildings; second, the defendant engaged in such actions

7   with the intent to impede, disrupt, or disturb the orderly

8   conduct of a session of Congress or either house of Congress or

9   the orderly conduct in that building of a hearing before or any

10   deliberations of a committee of Congress or either house of

11   Congress.

12      Sir, do you understand those elements?

13      THE DEFENDANT:  Yes, Your Honor.

14      THE COURT:  And did you in fact commit conduct that

15   meets each of those elements?

16      THE DEFENDANT:  Yes, Your Honor.

17      THE COURT:  Sir, the final charge is an act of

18   physical violence in the Capitol grounds or building, and the

19   elements for that are, one, the defendant engaged in act of

20   physical violence in the grounds or any of the Capitol buildings

21   and, two, that the defendant did so willfully and knowingly.

22      Do you understand those elements, sir?

23      THE DEFENDANT:  Yes, Your Honor.

24      THE COURT:  And do you agree that you in fact

25   committed acts that meet each of those elements?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.  Sir, I'm now going to go

3     through the statutory penalties.  These are the maximum

4     penalties you may face for each of these offenses.

5          Civil disorder carries a maximum sentence of five years in

6     prison, $250,000 fine, a maximum term of supervised release of

7     not more than three years, and a special assessment of $100.

8          Do you understand that, sir?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Do you understand that destruction of

11     government property, entering and remaining in restricted

12     building or grounds, disorderly and disruptive conduct in a

13     restricted building or grounds, and engaging in physical

14     violence in a restricted building or grounds each carry a

15     maximum of one year in jail, a fine of up to $100,000, a maximum

16     term of supervised release of not more than one year, and $25

17     special assessment as to each offense.

18          Do you understand that, sir?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Do you understand that disorderly conduct

21     in a Capitol building or grounds and an act of physical violence

22     in the Capitol grounds or building carry a maximum sentence of

23     six months in jail, five years of probation, $5,000 fine, and a

24     $10 special assessment per charge?  Do you understand that, sir?

25          THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  Do you understand that as a part of any

2    sentence, I could order you to pay restitution to any victim of

3    your offense for any damages done as a result of your crime?

4    THE DEFENDANT:  Yes, Your Honor.

5    THE COURT:  Do you understand that parole has been

6    abolished for federal charges, and if you're sentenced to

7    prison, you will serve the sentence I impose, with a possible

8    reduction for good time up to approximately 54 days a year, and

9    that you will not be released early on parole, as used to be the

10    case?

11    THE DEFENDANT:  Yes, Your Honor.

12    THE COURT:  Sir, this case involves more than a single

13    count.  Do you understand that the sentence on each count could

14    be consecutive?

15    THE DEFENDANT:  Yes, Your Honor.

16    THE COURT:  Do you understand that this offense is

17    subject to the U.S. Sentencing Guidelines?

18    THE DEFENDANT:  Yes, Your Honor.

19    THE COURT:  Have you discussed with your attorney how

20    those guidelines may apply in this case?

21    THE DEFENDANT:  Yes, Your Honor.

22    THE COURT:  Have you talked with your attorney about

23    the guideline -- any sort of guideline estimates that either the

24    prosecutors or your attorney think may apply here?

25    THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And I understand the government in its

2     plea letter had provided a estimated guideline range.

3          Do you understand that that is just an estimate, sir?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Do you understand that the guideline -- we

6     won't be able to tell for sure what the guideline range is until

7     after Probation has prepared a presentence report and after your

8     attorney and the government have an opportunity to object to it?

9          Only then, Judge Friedrich will actually calculate what the

10    guideline range is.

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  And do you understand that the sentencing

13    guideline range is where Judge Friedrich must start in

14    determining your sentence, but she will not have to end there

15    because the guidelines are not binding on her?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Do you understand that in determining the

18    sentence, Judge Friedrich's obligation is to calculate the

19    guidelines range, possible departures under the guidelines, and

20    other sentencing factors under 18 U.S.C. 3553(a)?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  Do you understand that Judge Friedrich can

23    sentence you anywhere within that range up to those statutory

24    maxima we just discussed, and the only thing she can't do is

25    sentence you higher than the statutory maximum?

1          THE DEFENDANT:  Could you restate that, Your Honor?

2          THE COURT:  Yeah.  We talked about the guideline

3    ranges.  The bottom line is, those guideline ranges are not

4    binding on her, that she has the authority in some circumstances

5    to go above the guideline range or below it.

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  The only thing she can't do is sentence

8    you above the statutory maximum.

9          THE DEFENDANT:  (Nodded head.)

10          THE COURT:  All right.  Do you understand that you're

11    not required to plead guilty and that you have a right to go to

12    trial on the charges contained in the indictment?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  If you went to trial, the government would

15    have to prove your guilt beyond a reasonable doubt and would

16    have to convince 12 jurors to unanimously convict you.

17       Do you understand that, sir?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  You would have the right to have a lawyer

20    with you throughout the trial and at every other stage of the

21    proceeding and, if necessary, have the Court appoint counsel for

22    you.  Your lawyer can make motions, including challenges to

23    searches or seizures, to move to suppress statements or

24    evidence.

25       Do you understand that, sir?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Your lawyer could also make objections

3     during a trial and cross-examine all the government's witnesses.

4        Do you understand that?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  You also would have the right to present a

7     defense and to put on evidence, including your own witnesses who

8     you could subpoena and require to testify on your behalf if you

9     wished to, but you would not be required to put on any evidence

10    at all because you would be presumed innocent.

11       Do you understand that, sir?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  In addition, you can testify at trial if

14    you chose to do so, but nobody could force you to testify

15    because you have an absolute right to remain silent at your

16    trial, and I would instruct the jury that they cannot hold that

17    against you.

18       Do you understand that, sir?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Do you understand that unless and until I

21    accept your guilty plea, the law presumes that you are innocent

22    because it is the government's burden to prove your guilt beyond

23    a reasonable doubt, and until it does, you cannot be convicted

24    at trial?

25         THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  If you were found guilty at your trial,

2    you would have a right to appeal, and if you cannot afford a

3    lawyer or on your appeal, a lawyer would be appointed to

4    represent you.

5        Do you understand that, sir?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Do you understand that if you plead

8    guilty, you will waive your right to a trial, including the

9    rights I've just discussed, and that there will be no trial?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Sir, I'm showing you the Waiver of Trial

12    by Jury form in this case.

13        Is this your signature?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Did you read the waiver before signing it?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Do you understand it?

18          THE DEFENDANT:  Yes, I do.

19          THE COURT:  Have you had enough time to talk with your

20    lawyer about it?

21          THE DEFENDANT:  Yes, I have, Your Honor.

22          THE COURT:  Do you wish to waive your right to a

23    trial?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Do you understand that if I accept your

1  plea, you may be deprived of valuable civil rights, such as the

2  right to vote, the right to hold certain jobs, the right to

3  serve on a jury, and the right to possess any kind of firearm or

4  ammunition?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Understanding all of the rights that you

7  are giving up by pleading guilty, do you still want to plead

8  guilty?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Do you have any questions about what

11  rights you are giving up or anything else connected with this

12  plea of guilty?

13          THE DEFENDANT:  No, Your Honor.

14          THE COURT:  Have you had enough time to discuss with

15  your attorney the charges against you, this plea, and that the

16  rights -- and the rights that you're giving up by pleading

17  guilty?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Are you satisfied with the services of

20  Mr. Shipley in this case?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Do you have --

23          MR. HAAG:  I think we need to go over the language

24  with counsel.

25          THE COURT:  Why don't you take a quick look at that.

1          (Government counsel and defense counsel conferred.)

2          (Defense counsel and defendant conferred.)

3          MR. SHIPLEY:  We have agreed on factual language to go

4    into, and counsel is now writing it into the bottom of the typed

5    document so it will all be in one place, but they did show me

6    their language.  We changed one word, and it's acceptable to

7    both sides.

8          THE COURT:  Mr. Ontell, can I ask you to just read

9    that language.

10         MR. ONTELL:  Sure, Your Honor.

11    "While on the Capitol grounds and in the midst of a civil

12    disorder, Mr. Sargent did impede, obstruct, or interfere with a

13    law enforcement officer engaged in the lawful performance of his

14    duties.  When the officer was attempting to stop another rioter,

15    Mr. Sargent did physically and intentionally separate the rioter

16    and the police officer, thereby preventing the officer from

17    detaining the rioter."

18         THE COURT:  All right.  Do you agree with that

19    statement, sir?

20         THE DEFENDANT:  I do, Your Honor.

21         THE COURT:  Okay.  Do the parties agree that I've

22    correctly stated the terms upon which Mr. Sargent has agreed to

23    plead guilty?  Mr. Shipley?

24         MR. SHIPLEY:  Yes, Your Honor.

25         THE COURT:  Mr. Ontell?

1          MR. ONTELL:  Yes, Your Honor.

2          THE COURT:  Mr. Sargent, is what I've stated here what

3     you agree to?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Has anyone promised you what sentence the

6     Court will give you in this case?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  Has anyone made any promises to you to get

9     you to plead guilty?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  Do you have any confusion or questions

12     about the plea that you're entering today that you would like to

13     ask me or your attorney about?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  Are you pleading guilty because you are in

16     fact guilty?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Has anyone forced, threatened, or coerced

19     you to get you to plead guilty?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  How do you plead to the charge of civil

22     disorder in violation of Title 18 United States Code 231(a)(3)?

23     Guilty or not guilty?

24          THE DEFENDANT:  Guilty.

25          THE COURT:  How do you plead on the charge of

destruction of government property and aiding and abetting in

violation of 18 U.S.C. 1361 and 2?  Guilty or not guilty?

        THE DEFENDANT:  Guilty.

        THE COURT:  How do you plead on the charge of entering

and remaining in a restricted building or grounds in violation

of Title 18 U.S.C. 1752(a)(1)?  Guilty or not guilty?

        THE DEFENDANT:  Guilty.

        THE COURT:  How do you plead on the charge of

disorderly and disruptive conduct in a restricted building or

grounds in violation of Title 18 U.S.C. 1752(a)(1)?  Guilty or

not guilty?

        THE DEFENDANT:  Guilty.

        THE COURT:  How do you plead on the charge of engaging

in physical violence in a restricted building or grounds in

violation of Title 18 U.S.C. 1752(a)(4)?  Guilty or not guilty?

        THE DEFENDANT:  Guilty.

        THE COURT:  How do you plead on the charge of

disorderly conduct in a Capitol building in violation of Title

40 U.S.C. 5104?  Guilty or not guilty?

        THE DEFENDANT:  Guilty.

        THE COURT:  How do you plead on the count of act of

physical violence in a Capitol building or grounds in violation

of Title 40 U.S.C. 5104?  Guilty or not guilty?

        THE DEFENDANT:  Guilty.

        THE COURT:  I'm satisfied that the defendant

1    understands his rights and what he is waiving in agreeing to

2    plead guilty.  I find that he has entered his plea voluntarily,

3    and I find that there's an adequate factual basis for the plea.

4        I therefore accept the defendant's plea and find him guilty

5    of civil disorder, destruction of government property and aiding

6    and abetting, entering and remaining in a restricted building or

7    grounds, disorderly and disruptive conduct in a restricted

8    building or grounds, engaging in physical violence in a

9    restricted building or grounds, and disorderly conduct in a

10   Capitol building, and act of physical violence in the Capitol

11   building or grounds.

12       Sir, the Probation Office will prepare a written

13   presentence report to assist me in sentencing.  You will be

14   asked to give information for the report, and your attorney may

15   be present if you wish.  You may read the report before the

16   sentencing hearing, and you and your attorney will have an

17   opportunity to speak to me at your sentencing hearing.

18       Mr. Hopkins, do you have a proposed sentencing date?

19           COURTROOM DEPUTY:  Counsel, are you available on the

20   28th of September at 1:00?  How is that week for you?

21           MR. SHIPLEY:  That's a yes, and if I have a problem, I

22   will let you know forthwith.

23           COURTROOM DEPUTY:  The judge is going to want

24   sentencing memoranda one week ahead of time, which would be

25   September 21st, and if there is any reply, on the 25th.  It's

1   not necessary, but if there is one.

2           THE COURT:  Mr. Ontell, is the government also

3   available then?

4           MR. ONTELL:  I'm sorry, Your Honor?

5           THE COURT:  The government is also available for

6   sentencing?

7           MR. ONTELL:  Yes, Your Honor.

8           THE COURT:  Sir, the Probation Office will prepare --

9   well, let me -- I think I've already directed you on that.

10       We've got the sentencing date, Mr. Hopkins.

11       Mr. Ontell, anything further for the government?

12          MR. ONTELL:  No, Your Honor.  We just would like to

13  thank Your Honor for helping us on this matter and for stepping

14  in for Judge Friedrich.

15          THE COURT:  I'm happy to do so.

16       And I'm signing the Waiver of Trial by Jury form which

17  Mr. Sargent and the attorneys have already signed.

18       Anything further for the defense, Mr. Shipley?

19          MR. SHIPLEY:  Nothing, Your Honor.  Would you like us

20  to provide this to Mr. Hopkins to file in the docket?

21          THE COURT:  Yes.  I take it everybody's initialed on

22  that additional language there?

23          COURTROOM DEPUTY:  Mr. Hopkins would definitely like

24  it.  Thank you, Judge.

25          MR. ONTELL:  Your Honor, just one clarifying question.

1    I believe in the petition to enter a guilty plea, there's a

2    question about what conduct he's pleading guilty to.  We want to

3    make sure that that actually references the Statement of Offense

4    that the defense has submitted.  I think that's what the conduct

5    is in the document that they signed.

6            THE COURT:  Why don't you take a look and let me know.

7    It feels to me we've got all the pieces of the puzzle here.

8            MR. ONTELL:  Yes, Your Honor.

9        (Proceedings adjourned at 10:05 a.m.)

1                 CERTIFICATE OF OFFICIAL COURT REPORTER

2

3         I, Sara A. Wick, certify that the foregoing is a

4 correct transcript from the record of proceedings in the

5 above-entitled matter.

6

7

8 /s/ Sara A. Wick               August 7, 2023

9 SIGNATURE OF COURT REPORTER       DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25