UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 21-cr-639 (DLF) |
| v. : | |
| : | |
| ANTHONY SARGENT, : | |
| : | |
| Defendant : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to the Defendant's sentencing memorandum. ECF No. 47 ("Def. Mem."). In his memorandum, the Defendant misstates the evidence in this case and contradicts his own sworn statement of offense at least twice. Although the Defendant did not argue for the application of the newly enacted U.S.S.G. §4C1.1, the government will briefly address why that guideline is not applicable to this case. The government will address the Defendant's other arguments, as needed, at the sentencing hearing on November 7, 2023.

I.  **THE DEFENDANT'S STATEMENTS ABOUT THE OFFICERS HE ATTACKED ARE DECEPTIVE.**

In an attempt to justify physically grabbing onto Officer 1 and shoving him into the crowd of rioters, the Defendant claimed that Officer 1 said in an interview that the Defendant was "protective" towards him. Def. Mem. at 19. The problem for the Defendant, however, is that Officer 1 never made this statement. Only Officer 2 said that Defendant was not aggressive toward Officer 1. Furthermore, Officer 2 had no recollection of when Sargent began pushing Officer 1 and Officer 2 took about 17 seconds to reach the area where Sargent had pushed Officer 1. *See*

1

PSR ¶ 24; Gov't Ex. 7 at 18:55-19:12. Neither Officer 1 nor Officer 2 "confirmed" that they or any other officer were "bear-hugged […] in a protective manner." Def. Mem. at 19.

The Defendant makes this factual assertion about Officer 1's perception of his actions because the Defendant wishes to paint himself as an altruistic actor during the riot. *See* Def. Mem. at 19 (He was "afraid for the safety of the officer," "[Sargent] bear-hugged the officer in a protective manner-confirmed by the officer," "Sargent yelled to the officer he would protect him," and "Sargent grabbed the officer again in an afford [sic] to afford him a measure of safety."). These assertions, however, do not comport with reality. Video shows the Defendant driving Officer 1 away from the safety of his post at the North Door and into the mob. *See* Gov't Ex. 7A. Video also shows the Defendant twice shoving Officers 1 and 2 even further from the North Door and into the mob than he had pushed Officer 1. *See* Gov't Ex. 9A. The situation was dire enough that a group of officers had to leave the North Door in order to bring Officers 1 and 2 back to safety. *See* Gov't Ex. 9 at 0:12-1:00; Gov't Ex. 7 19:40-19:55. The Defendant's attempt to portray himself as a protector of officers, officers that he intentionally drove into the mob of rioters, is unsupported by the evidence. His continued sugarcoating of his conduct is further proof of his lack of remorse, his failure to accept responsibility, and the need for a lengthy sentence of imprisonment.

II. **THE DEFENDANT'S CLAIMS ABOUT THE ROCK-LIKE OBJECT AND HIS INTENT IN USING IT ARE SELF-CONTRADICTORY.**

Throughout the Defendant's memorandum, he objects to the use of the phrase "rock-like object" to describe what he threw at the set of Capitol doors. For example, in his objection to the dangerous weapon specific offense characteristic for Count Two, Sargent says, "[t]he PSR refers to [the object] in various places as a 'heavy rock-like object' or words similar to that. But that is speculation." Def. Mem. at 6. This description of the object, however, is not speculation. Rather, the origin of the phrase "rock-like object" is Sargent's own statement of offense, which he

prepared, swore to, and submitted to the Court. ECF No. 37-1 at 1 ("Mr. Sargent willfully and knowingly twice threw a *rock-like object* at a set of doors . . . .") (emphasis added). Sargent's own description of the object is also consistent with the video of the incident as described in the government's memorandum. ECF No. 45 ("Gov't Mem.") at 8-9. Yet, Sargent now objects to the PSR's use of a phrase that he coined.

The Defendant's fight with his own words do not end there. In his statement of offense, the Defendant admitted to throwing the object at the doors "with the intended purpose of impeding, obstructing, and interfering with the officers standing behind those doors." ECF No. 37-1 at 1. Yet in his memorandum, the Defendant argues that the appropriate guideline for Count Five, charging him with an act of physical violence on Capitol grounds, is §2B2.3 (Trespass) rather than §2A2.4 (Obstructing or Impeding Officers). Def. Mem. at 8-9. These self-contradicting objections supports the government's and probation's conclusion that Sargent is not entitled to a reduction for acceptance of responsibility. Gov't Mem. at 19-20; PSR ¶¶ 48, 76.

### III. U.S.S.G. §4C1.1 IS NOT APPLICABLE TO THIS CASE.

Recent amendments to the Sentencing Guidelines for 2023 include a new guideline, U.S.S.G. §4C1.1, which provides for a two-level decrease in the offense level for offenders who have no criminal history points and who meet certain additional criteria. The Defendant does not argue that the decrease applies to him. However, if he did ask for the decrease, the burden is on him to prove that he satisfies all the criteria in §4C1.1(a) to be eligible. *See United States v. Rodriguez*, 676 F.3d 183, 191 (D.C. Cir. 2012) ("It is the defendant's burden to establish safety-valve eligibility."). The inquiry into whether §4C1.1 applies is fact-specific. *See United States v. Galvon-Manzo*, 642 F.3d 1260, 1268 (10th Cir. 2011).

Section 4C1.1 does not apply in this case because the Defendant personally used violence and the threat of violence in connection with the offenses, and he possessed a dangerous weapon in connection with the offense. *See* U.S.S.G. §4C1.1(a)(4) and (7) (stating that acts of violence and possession of a dangerous weapon disqualify potential candidates from attaining the §4C1.1 adjustment). Here, the Defendant assaulted and physically obstructed officers multiple times. He also twice hurled a heavy rock-like object at the doors behind which officers stood with the intent "to break a window." Def. Mem. at 12. These are clear acts of violence against persons and property. The government is aware of at least two cases in which courts have rejected the application of §4C1.1 to January 6 defendants who engaged in violence. *See United States v. Gundersen*, 21-cr-137 (RC); *United States v. Baquero*, 21-cr-702 (JEB). Furthermore, the heavy rock-like object he twice heaved against the North Door and the officers behind the Door was a dangerous weapon because it is an object that the Defendant used to try and shatter glass panels. He only failed to do so because the glass, as he described it, was "ballistic." Gov't Mem. at 9. An object capable of shattering glass is certainly "capable of inflicting death or serious bodily injury." U.S.S.G. §1B1.1 cmt. n.1; *see also* U.S.S.G. §4C1.1(b)(1) (stating that dangerous weapon has the meaning given to that term "in the Commentary to §1B1.1").

The Court should not apply §4C1.1 here for the further reason that the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop

4

itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [the defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions"). The government is not aware of any judge in a January 6 case issuing a lower sentence than it would otherwise have imposed based on §4C1.1 and the court specifically rejected such a request in *United States v. Nassif*, 21-cr-421 (JDB), where the defendant was convicted of violations of 18 U.S.C. §§ 1752(a)(1)-(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G).

Moreover, the Sentencing Commission enacted §4C1.1 based on recidivism data for offenders released in 2010. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. This is particularly so given the degree to which individuals, including defendants who have been sentenced, continue to propagate the same visceral sentiments which motivated the attack.

Due to the unique nature of the January 6 mob, the harms caused by the January 6 riot, and the significant need to deter future mob violence, the government submits that even if the Court finds that §4C1.1 applies, the Court should nevertheless vary upwards by two levels to counter any reduction in offense level. Such treatment would recognize the unique nature of the criminal events

of January 6, 2021, coupled with the overwhelming need to ensure future deterrence, despite a person's limited criminal history.

Finally, to avoid unnecessary litigation, if the court declines to apply §4C1.1, the government requests that the Court make clear at sentencing that it would have imposed the same sentence regardless of whether §4C1.1 applies.[1]

                                      Respectfully submitted,
                                      MATTHEW M. GRAVES
                                      UNITED STATES ATTORNEY

By:    */s/ Joshua Ontell*
        JOSHUA ONTELL
        VA Bar No. 92444
        Assistant United States Attorney
        601 D Street, N.W.
        Washington, DC 20530
        (202) 252-7706
        joshua.ontell@usdoj.gov

        */s/ Andrew Haag*
        ANDREW S. HAAG
        Assistant United States Attorney
        MA Bar No. 705425
        601 D Street, N.W.
        Washington, DC 20530
        (202) 252-7755
        Andrew.Haag@usdoj.gov

---

[1] U.S.S.G. §5C1.1 has also been amended with a new application note providing that if a defendant receives an offense level reduction under §4C1.1 and either their applicable guideline range is in Zone A or B of the Sentencing Table, or the guideline range overstates the seriousness of the offense, imprisonment may not be appropriate. *See* U.S.S.G. §5C1.1, comment. n. 10. The government submits that for the same reasons that §4C1.1 should not be applied in this case, a sentence of imprisonment is appropriate notwithstanding Application Note 10 to §5C1.1.