UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 21-cr-00639-DLF |
| | ) | |
| ANTHONY SARGENT, | ) | |
| | ) | |
|       Defendant | ) | |

**DEFENDANT ANTHONY SARGENT'S REPLY TO GOVERNMENT'S SENTENCING STATEMENT**

William L. Shipley
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com
*Attorney for Defendant*

    I.    "Obstruction," "Assault" and "Aggravated Assault" at Sentencing in a Non-<u>Assault Case</u>.

A section of the Government's Sentencing Statement at Page 10 is captioned "Obstruction and Assault of Two U.S. Capitol Police Officers."

Title 18 U.S.C Section 111(a) provides that it is a felony if any person "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties."

Defendant Anthony Sargent was the subject of a criminal complaint filed on September 13, 2021. The face of that complaint alleged violations of 18 U.S.C. §§ 1361 (Destruction of Government Property), 18 U.S.C. § 1752 (Knowingly Entering or Remaining in any Restricted Building or Grounds), and 40 U.S.C. § 5104 (Violent Entry and Disorderly Conduct on Capitol Grounds.

An indictment was returned by a grand jury on October 22, 2021 charging him with the federal crimes of "Civil Disorder," "Destruction of Government Property," "Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority," "Disorderly and Disruptive Conduct in any Restricted Building or Grounds Without Lawful Authority," "Engaging in Physical Violence in any Restricted Building or Grounds," "Violent Entry and Disorderly Conduct on Capitol Grounds," and committing an "Act of Physical Violence in the Capitol Grounds or Buildings."

A Superseding indictment was returned by a grand jury on April 22, 2022.

The Government never sought or obtained a charge that Mr. Sargent violated 18 U.S.C. Sec. 111(a) charging him with "assaulting" any federal law

enforcement officer on January 6, 2021 – a crime different than the ones that the Government did opt to charge him with.

Yet now at Sentencing the Government urges this Court to sentence Mr. Sargent in such a way that the Sentencing Guidelines would apply as if he had been convicted of a crime for which the Government chose to not charge him.

It seems incongruous – to put it charitably – to seek to sentence a defendant on the premise that he committed an "aggravated assault" having passed on the opportunity to make a formal allegation that he committed any assault. This is particularly so where the definition of "aggravated assault" in the Guidelines depends upon the existence of a "felonious assault" having taken place. Thus, the Government's position askes the Court to PRESUME the existence of a felony for which no conviction was pursued, much less obtained, based on the Government's own decision-making.

The Government advances this theory based on a claim that the physical interaction between Mr. Sargent and Officer 1 was "assault" in that it was "unwanted touching."

The Government claims Mr. Sargent grabbed Officer 1 before he could attempt to arrest an individual who had sprayed officers with pepper spray. That is not what Officer 1 says.

The Government claims that Mr. Sargent pushed Officer 1 away "further into the chaos of the mob". That's not what Officer 1 said.

The Government makes these allegations about "assault" in the face of interviews with both Officers in which neither describes Mr. Sargent's

interactions with them as aggressive or violent – and in some ways the Government's claims contradict what the Officers said when interviewed.

On March 17, 2021, Officer 1 was interviewed and communicated the following to the FBI:



Officer 1 states he was grabbed and pulled down the stairs by the crowd – he does not identify Mr. Sargent as being part of that attack on him.

He states he heard people yelling that he was attacking a woman – putting him in further physical jeopardy while exposed to the crowd's anger.

He states that Mr. Sargent "pushed and grabbed" him, taking him away from the building – and away from the agitated protesters that had just attacked him for "attacking" the woman. Mr. Sargent describes having "bear-hugged Officer 1" to shield him from the attacks by the crowd. As noted below, Officer 2 heard Mr. Sargent yelling at the crowd to stop attacking Officer 1.

4

Officer 1 states that Mr. Sargent prevented him from heading back up the stairs and in the direction of the Capitol building – the direction of the agitated protesters that had attacked him for "attacking" the woman.

What he doesn't say – because he didn't know it at the time – was that Mr. Sargent did, in fact, help Officer 2 make his way to Officer 1 to assist him.

On May 21, 2021, Officer 2 was interviewed and communicated the following to the FBI:



On June 3, 2021, Officer 2 was interviewed a second time and was shown some photographs. He communicated the following:

> Picture #4: F█ yelled at the crowd to stop "wailing on him" and S████. An individual wearing a grey hoodie with "2016" emblazoned on the chest told F█ to leave the Capitol Building area. F█ told the individual that he intended to get to S████.



Picture #5: The man in the grey hoodie assists F█ down the stairs toward S█████.

Pictures #6 and #7: F█████████████████████ up the stairs to the North Door. F█ lost contact with the individual wearing the grey hoodie after the events depicted in picture #5. On picture #7, F█ identifed USCP Officer T█████ [ph].

It is only the prosecutors who seem to have the view that there is an "assault" crime involving Mr. Sargent to be vindicated through sentencing here -- a crime they chose not to file.

Without any support in either Officers statements, the Government claims that Mr. Sargent made an effort to push both Officers, when they were united, "further into the mob and away from the North door."

Mr. Sargent's efforts at the time were to move the officers in a direction other than back into the rioters who had just attacked Officer 1. The "mob" father away from the doors had not engaged in any violence towards the officers, hence, that was the safer direction for them to go.

Mr. Sargent acknowledges that he interfered with Officer 1 while Officer 1 was engaged in the performance of his official duty – but he did so when Officer 1 was in a vulnerable position vis-à-vis a large crowd that was hostile towards him because it perceived Officer 1 as "attacking" a woman in her 50's.

Officer 1 confirms the essential facts as consistent with Mr. Sargent's admissions. He was being assaulted by the crowd, Mr. Sargent intervened and Mr. Sargent moved him away from the building – AND away from the crowd that had attacked him. Officer 1 likely did not realize it at the time, but Mr.

6

Sargent acted because he thought Officer 1's safety would be at risk if he tried to go back through the crowd that had been beating him.

Mr. Sargent then encountered Officer 2 who was trying to come to the assistance of Officer 1.  INITIALLY, Mr. Sargent told Officer 2 he should go back to the Police line and not go in the direction that Officer 1 had gone.  When Officer 2 persisted – as confirmed by Officer 2 – Mr. Sargent then HELPED Officer 2 reach Officer 1 by pushing through the crowd with him.  This is also confirmed by Officer 2's statement.

The events of the episode were fluid and fast moving, emotions were high on all sides, and both Officers 1 and 2, and Mr. Sargent might have had different perspectives on what Mr. Sargent was doing and why he was doing it.

But it is not a matter of dispute that Mr. Sargent did separate Officer 1 from other protesters who had attacked Officer 1; Mr. Sargent himself did not assault Officer 1; Mr. Sargent directed Officer 1 away from the area where he had just been attacked by other protesters; and Mr. Sargent did assist Officer 2 in reaching Officer 1.

Neither Officer 2 nor Officer 1 described being attacked or "assaulted" by Mr. Sargent.

Mr. Sargent did not possess legal authority to act in the fashion that he did, he simply reacted to the circumstances around him as they unfolded.  He yelled at other protesters to stop attacking Officer 1 – CONFIRMED by Officer 2.  The Officers were in the process of performing their official duties, and Mr. Sargent's conduct interfered in their ability to do that.

    2.    <u>Inclusion of Out-Of-Context Messages in PSR Offense Conduct</u>.

7

The Government seems to not understand how the concept of "offense conduct" works at sentencing.

The Government bears the burden of proof.

The PSR includes a variety of single sentences and sentence fragments from various manner and means of communication involving Mr. Sargent. Some of the material doesn't identify the author of the content, and almost none of it includes any "context" in terms of the string of messages from which it was extracted.

The Government has included many of the same sentences and sentence fragments in its Sentencing Statement. But the Government doesn't identify the authors of the content.

Mr. Sargent and his counsel suspect that the Probation Officer did not personally review the source material and extract the sentences and sentence fragments set forth in the PSR. Mr. Sargent and his counsel – particularly his counsel – suspect this material was given to the Probation Officer in exactly the form it is presented in the PSR. In other words, the sponsor of this "offense conduct" is the Government.

Mr. Sargent objected to the inclusion of this information on the basis that it lacked context and has an insufficient factual basis to draw any conclusion as to meaning and relevance of the content.

The Government's Sentencing Statement takes the surprising view that it is incumbent upon Mr. Sargent to offer the more fulsome version of these exchanges rather than the Government, as the sponsor of the "conduct"

included in the PSR, being obligated to produce EVIDENCE at sentencing showing the sponsored information to be accurate and in context.

But beyond the contextual shortcomings, the material is actually irrelevant because whatever Mr. Sargent might have read or communicated, he did not engage in conduct on January 6 in concert with other Proud Boys as the Government wants the Court to assume. As noted in the Sentencing Statement, and as Mr. Sargent will make clear himself, on January 6 he separated from the larger group of Proud Boys attending the rally and protest, and was not part of whatever conduct others might have engaged in at other places and times. To the extent the rhetoric exchanged between members of the Proud Boys leading up to January 6 suggested or contemplated group conduct with a shared intention, Mr. Sargent was not a participant in any joint criminal conduct with others. So the bombast and rhetoric expressed in the exchanges ended there – bombast and rhetoric.

3. <u>Guilt By Association</u>.

The Government wants to make sure the Court does not fail to notice that Mr. Sargent was a member of the St. Augustine Florida Chapter of the Proud Boys.

But he wasn't with any other Proud Boys at the location where he committed the offenses to which he pled guilty.

There is no evidence implicating him in any criminal conduct engaged in by other Proud Boys at other times and places in and around the Capitol on January 6.

The Government knows he traveled to Washington D.C. in a van with other members of his Proud Boys chapter, as it has investigated the details of that trip.

The Government knows he stayed overnight in an Airbnb with other members of the Proud Boys, as it has investigated the details of his housing.

But Mr. Sargent was charged as a single defendant in a stand-alone case. The Government has not alleged or provided evidence that the location where he engaged in the criminal conduct to which he pled guilty had any other members of the Proud Boys.

Yet the Government insists on including inflammatory communications among various Proud Boy members as part of its factual presentation against Mr. Sargent, without offering any evidentiary link to show that Mr. Sargent knew the individual members making the inflammatory comments, or that he agreed with them.

For the record, the individual with the username "Sargent Slaughter" is not Mr. Sargent. Mr. Sargent's username in various chats and text message exchanges was "Sargent Laffer."


Date: November 3, 2023						Respectfully Submitted,

								/s/ William L. Shipley
								William L. Shipley
								PO Box 745
								Kailua, Hawaii 96734

Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for ANTHONY SARGENT*