UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | Case No. 21-cr-00639-DLF |
| ) | |
| ANTHONY SARGENT, ) | |
| ) | |
| ) | |
| Defendant ) | |
| ) | |

**DEFENDANT ANTHONY SARGENT'S SUPPLEMENTAL SENTENCING STATEMENT**

William L. Shipley
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com
*Attorney for Defendant*

Comes now Defendant Anthony Sargent, by and through his counsel of record William L. Shipley, and submits this supplemental sentencing statement pursuant to this Court's order dated November 7, 2023.

    I.    Mr. Sargent Has Truthfully Stated Both At His Change of Plea and Sentencing Hearing That He Does Not Know What the Object Was That he Threw At the <u>Window on January 6</u>.

The Court has determined that it will follow the cross-reference set forth in U.S.S.G. 2A2.4(c) and calculate Mr. Sargent's Adjusted Offense Level in this case by applying Sec. 2A2.2 for "Aggravated Assault."

Mr. Sargent repeats his objection for the record. The Government opted to not charge Mr. Sargent with a violation of Sec. 111(a) or (b), but only with a violation of Sec. 231. Mr. Sargent made a decision to plead guilty to the crime charged.

Applying the cross-reference in the absence of a charged "assault" opens the sentencing determination up to guideline provisions not otherwise applicable to a Sec. 231 charge. One such enhancement is the +4 level enhancement for use of a "dangerous weapon."

There was much discussion at the first hearing about the nature of the item that was thrown at the window by Mr. Sargent. Mr. Sargent has never denied that he thought it was an item that was capable of breaking the glass window. When the specific question was posed to him by Judge Nichols during the plea colloquy, Judge Nichols referenced a "heavy rock-like object." Mr. Sargent's answer was "I'm not sure I would call it heavy." He also said that he isn't sure exactly what the object was, as it was simply an object on the ground he picked up and threw.

It seems an almost too obvious observation to make that the grounds of the United States Capitol is not a place where one would expect to find "rocks" the size baseballs laying about.  But there was construction going on related to the upcoming inaugural, and there were thousands of other protesters all around the Capitol before Mr. Sargent arrived.

Whether or not the "rock-like" object was a weapon as contemplated by the Guidelines requires a reference to the definitions and application notes therein.  A "deadly weapon" is obvious as such -- a firearm or a knife where the only purpose for its use would be with malign intent towards the person against whom it was employed.  But Application Note 1 under Sec. 2A2.2 provides guidance regarding definitions that broaden the application beyond items that are "weapons" by definition, stating that in addition to having the meaning provided Sec. 1B1.1, a "dangerous weapon"  can also be an "instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense *with the intent to commit bodily injury*."  (Emphasis added).

The facts here are uncontested that Mr. Sargent threw the rock-like object in an effort to break a window.  There is NO evidence that he used the rock-like object "with the intent to commit bodily injury" as specified in Note 1 to Sec. 2B2.2.  The factual allegations involving the Sec. 231 offense where he had physical involvement with U.S. Capitol Police Officers is distinct in time – between 10 and 20 minutes earlier – from when he threw the rock-like object at the window.

There is simply no evidence in the record that he "used" the rock-like object in any fashion that would infer an "intent to commit bodily injury" against anyone, including U.S. Capitol Police Officers. As such, the +4 level enhancement should not be applied to the Sec. 231 offense under Sec. 2A2.2.

II.  An Upward Variance Is Not Warranted Based on the Use of the Rock-Like Object.

The separation in time between the two more serious factual episodes weighs against using facts incidental to one for the purpose of enhancing the guideline calculation for the other by way of an upward variance.

To justify and upward variance, this Court must first distinguish the facts here from a "typical" case with the same charge. United States v. Murray, 897 F.3d 298, 308–09 (D.C. Cir. 2018) ("To sustain an upward variance, the district court ... must state the specific reason why the defendant's conduct was more harmful or egregious than the typical case represented by the relevant Sentencing Guidelines range.")

The decision by the Court to apply the cross-reference here already takes into account the Court's point of view that Mr. Sargent's conduct is meaningfully different than the conduct of other defendants convicted under Sec. 231. Employing the cross-reference is a decision to sentence Mr. Sargent for an "aggravated assault" with which he was not charged.

An application of Sec. 2A2.4 would subject the defendant to both a lower base offense level as well as far fewer "Specific Offense Characteristics" – most notably the "official victim" enhancement which is not applicable to Sec. 2A2.4.

Rather than have the Adjusted Offense Level capped at 13 under 2A2.4, the cross-reference exposes Defendant Sargent to an Adjusted Offense level potentially as high as 24.  To justify an upward variance under these circumstances, the Court would need to justify doing so on the basis that Mr. Sargent's conduct was "more harmful or egregious" than other defendants whose guidelines were calculated on the same basis, i.e., Sec. 2A2.2.  The facts simply don't support such a finding.

Mr. Sargent did not injure – or even act in a manner that might suggest an intent to injure – any officer. As noted at the prior hearing, given his size, had Mr. Sargent intended to act in an aggressive fashion towards the two officers he did interact with, that intent would have certainly been manifested in conduct different that was his shown on the video evidence.

The suggestion of a possible upward variance to at or near the statutory maximum of 60 months would make Mr. Sargent's sentence dramatically different that nearly every other defendant convicted of and sentenced where the lead charge is a violation of Sec. 231.  Here are some case names and case numbers for defendants where the lead charge was a violation of Sec. 231, and the sentence imposed:

    U.S. v. Johnson (Daniel), 21-CR-00407-DLF -- 4 months

    U.S. v. Johnson (Daryl), 21-CR-00407-DLF -- 30 days

    U.S. v. Cooke, 22-CR-00052-RCL – 12 months and 1 day

    U.S. v. Evans, 21-CR-00337-RCL -- 3 months

    U.S. v. Blair, 21-CR-00186-CRC -- 5 months

    U.S. v. Griswold, 21-CR-00459-CRC -- 75 days

    U.S. v. Romero, 21-CR-00677-TSC -- 12 months and 1 day

    U.S. v. Cortez, 21-CR-00317-TSC -- 4 months

    U.S. v. Hamner, 21-CR-00689-ABJ -- 30 months

    U.S. v. Ryals, 21-CR-00244-CKK -- 9 months

    U.S. v. Presley, 21-CR-257-RDM -- 12 months

    U.S. v. Tenney, 21-CR-00640-TFH – 36 mos. (Sec. 231 and Sec. 1512(c)(2))

    U.S. v. Cantwell, 21-CR-00089-EGS -- 5 months' incarceration

    U.S. v. Baugh, 22-CR-313-JEB -- 12 months' and 1 day

    U.S. v. Young, 21-CR-617-DLF – 8 mos (Sec. 111(a) and Sec. § 231)

    U.S. v. Hernandez, 22-CR-00042-CRC -- 24 mos (Sec. 231 and Sec. 111(a)).

    U.S. v. Hazelton, 21-CR-00030-JDB -- 10 days.

Obviously, the Court can distinguish the facts of Mr. Sargent's conduct from the facts of any of the defendants above and conclude that a different sentence is appropriate. But an upward variance to near or at the statutory maximum is certainly not warranted given that Mr. Sargent did not act aggressively toward any law enforcement officer, nor did he injure anyone – or even attempt to injure anyone during the course of his actions.

    III.    Mr. Sargent's Guilty Plea, The Plea Colloquy, and His Allocution All Suffice To <u>Entitle Him To The Benefit of Acceptance of Responsibility</u>.

As discussed at the prior hearing, a defendant can be denied acceptance of responsibility if he either falsely denies, or frivolously contests, relevant conduct that the court determines to be true. However, "[A] defendant is not

required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction …. the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous…." Sec. 3E1.1, Application Note 1(A).

Mr. Sargent's "challenge" regarding the thrown object is not a false denial or frivolous contesting of relevant conduct.  Mr. Sargent admitted to throwing a "rock-like object" – but as he said at the change of plea hearing, he doesn't know what that object actually was, nor did he consider it to be "heavy."

Mr. Sargent is not denying that he threw an object at the window, nor is he denying that he was attempting to break the window and thought the object might accomplish that purpose. He's not alleging something frivolous, i.e., that he used something that would not be thrown at a window in an attempt to break it -- a ball of yarn for example – and challenging the Government to prove otherwise when the object was not recovered.

But the government does have the burden of proof at sentencing on contested factual issues.  Mr. Sargent's objection only alleges a "failure of proof" on the question of the precise nature of the object, and what conclusions can be drawn from what evidence is available.  The "rock-like" object is not available and was never identified – definitively or otherwise.

The Government relies on the sound made by the object and some perceptible movement of CCTV cameras just inside the doors that seemly coincides with the sound of the impact, to establish the nature of the object as being a heavy rock.  The government cannot prove it was an actual rock and

Mr. Sargent is not obligated to make an admission to something the Government cannot prove.

If the Court determines that the Government's evidence is sufficient to reach a conclusion that the object was more likely than not a rock of some type – which is seemingly has -- that doesn't mean Mr. Sargent "frivolously" denied a relevant fact.  All he has done is challenge the adequacy of the evidence offered by the Government as to the nature of the object.  The Court has determined that the Government has the better of the argument and it's proof is sufficient to reach a preponderance – i.e., Mr. Sargent's challenge is unsuccessful.

However, it is worth noting when contemplating the nature of the rock-like object that Mr. Sargent made a comment captured on audio that the glass must be "ballistic" – presumably because the object bounced off twice without breaking the glass.  But it is almost certainly not the case that the glass was "ballistic" – or "anti-ballistic" to be more accurate.

Multiple windows at ground level all around the Capitol were broken out during the course of the afternoon on January 6.  Rather than the window in question being "anti-ballistic" and therefore sturdy enough to withstand the impact of a "rock" – heavy or otherwise – it is more likely that the thrown object was not sufficiently sturdy to break out the window, and Mr. Sargent's description of it being not "heavy" is worthy of being credited.[1]

---

[1] In fact, Mr. Sargent will submit a video of one of the windows next to the Senate Wind Doors being broken out by a rioter using only his hand.

    IV.    Mr. Sargent Agrees to Restitution Consistent With Other Defendants Who Have Pled Guilty Plus the Specific Damage Caused to the Capitol Door That Was <u>Damaged By His Actions</u>.

Because there was no agreement between Mr. Sargent and the Government in his case, the issue of restitution was never discussed/resolved between the two sides.

Mr. Sargent, as part of his acknowledgment of his wrongdoing, is willing to pay the $2000 in restitution that the Government has typically required of other defendants entering guilty pleas to one or more felonies.

In addition, recognizing that he did damage the specific doors where he attempted to make entry along with others, and that the Government has provided proof of the cost of repairing those doors, Mr. Sargent agrees to make restitution for having caused that particular loss to the taxpayers.

On that basis, Mr. Sargent has no objection to a restitution order in the amount of $2,980.00.

    V.    <u>Detention Is Not Warranted Based on the Conviction under Sec. 1752(a)(4)</u>.

To date there has been no consistent application of the remand statute in the manner asserted by the Government.  Recently after rendering guilty verdicts following a bench trial on counts charging violations of Section 1752(a)(f), and a felony conviction under Sec. 1361 for breaking a window at the Senate Wing Door windows, Judge Bates stated that the practice in this District is to not remand a defendant following conviction or sentencing when that Defendant has been on pretrial release and there have been no issues with

respect to that release.  He declined to remand the defendant in that case. United States v. Bozell, 21-cr-00216 JDB.

So far as counsel is aware, only Judge Nichols has taken the position that a conviction for violating Section 1752(a)(4) is an offense for which remand into custody is appropriate.  It is worth noting that Judge Nichols took the guilty plea in this case but did not remand Mr. Sargent into custody at that time.  He was aware of both the counts of conviction and the facts as admitted by Mr. Sargent in his plea colloquy – both in writing and as stated orally by Mr. Sargent.

Date: December 1, 2023　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　/s/ William L. Shipley
　　　　　　　　　　　　　　　　　　William L. Shipley
　　　　　　　　　　　　　　　　　　PO Box 745
　　　　　　　　　　　　　　　　　　Kailua, Hawaii 96734
　　　　　　　　　　　　　　　　　　Tel: (808) 228-1341
　　　　　　　　　　　　　　　　　　Email: 808Shipleylaw@gmail.com

　　　　　　　　　　　　　　　　　　*Attorney for Defendants*